UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                   :
GERARD HARRIS,                                  :

                   Plaintiff,                         :

              -against-                          : **MEMORANDUM & ORDER**

                                                   : 96 Civ. 7565 (KNF)

CITY OF NEW YORK, NEW YORK CITY   :
POLICE DEPARTMENT, HOWARD SAFIR, as :
POLICE COMMISSIONER, and WILLIAM   :
BRATTON, as former POLICE               :
COMMISSIONER,                          :

                   Defendants.             :
------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

      Before the Court in this employment discrimination action, which was terminated in 2000 via a "Stipulation of Settlement" and order of the Court, is Gerard Harris' ("Harris") pro se motion, made pursuant to Rules 60(b) and 60(d) of the Federal Rules of Civil Procedure. Through the motion, Harris seeks an order relieving him from: (1) "the fraudulent effects of the manipulation of the Order of the stipulated settlement by [his] former counsel Carroll & Friess"; and (2) "the said Order's withdrawal of the action with prejudice." The plaintiff also seeks an order, as provided for in New York Judiciary Law § 475, directing Carroll & Friess "to pay [him] the sum of $165,000," treble the portion of the settlement fund he maintains the law firm "wrongfully took from [him]." The motion is unopposed by the defendants;[1] however,

---

                [1]Local Civil Rule 7.1 of this court provides, in pertinent part, that

                                                                                                                                                                                                                                                  (continued...)

Rosemary Carroll, Esq. ("Carroll"), who represented Harris at the time the action was terminated, submitted an affirmation and a memorandum of law urging the Court to dismiss the motion, maintaining, principally, that the motion is untimely.

## BACKGROUND

On October 4, 1996, Harris commenced this action, pro se, by filing a complaint with the Clerk of Court. Subsequently, Harris retained counsel, the law firm of Carroll & Friess. In

---

[1](...continued)
(a) [e]xcept as otherwise permitted by the Court, all motions shall include the following motion papers:

> (1) A notice of motion, or an order to show cause signed by the Court, which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion;
>
> (2) A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined; and
>
> (3) Supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion.

(b) Except as otherwise permitted by the Court, all oppositions and replies with respect to motions shall comply with Local Civil Rule 7.1(a)(2) and (3) above, and an opposing party who seeks relief that goes beyond the denial of the motion shall comply as well with Local Civil Rule 7.1(a)(1) above.

> The defendants failed to comply with the Rule, as they did not file with the court, a memorandum of law and an affidavit(s) with exhibits attached thereto, setting forth factual information and portions of the record necessary for the Court's decision on the plaintiff's motion. See Local Civil Rule 7.1(b). Instead of complying with the Rule, the defendants' counsel sent a letter to the Court, as the defendants' response to the plaintiff's motion. That letter has not been considered by the Court.

February 1997, Carroll filed a notice of appearance with the Clerk of Court, on Harris' behalf. Thereafter, an amended complaint was filed by Harris. The defendants moved successfully, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the complaint, for failure to state a claim upon which relief could be granted. Harris appealed from the dismissal to the Second Circuit Court of Appeals, which, in August 1999, affirmed the district court's determination, in part, reversed it, in part, and remanded the case to the district court for further proceedings.

After the action was remanded, and shortly before it was scheduled for trial, the parties reached a negotiated disposition, the terms of which were memorialized in a writing styled "Stipulation of Settlement ('Stipulation')". The Stipulation states, inter alia, that

> [t]he defendants agree to pay to the plaintiffs [sic] the sum of $90,000.00 for damages, cost [sic] and Attorneys [sic] fees, which sum shall be paid by check, made payable to Carroll & Friess, as Attorneys for plaintiffs [sic] in full satisfaction of all claims, costs and attorneys fees, as to which defendants will make good faith efforts to pay said sum within 90 days of the signing of the stipulation. In consideration for the payment of the sum referred to in paragraph "2" hereof, plaintiff shall execute and deliver to defendants' attorney a General Release therefor, which release will be held in escrow by the Assistant Corporation Counsel until payment to plaintiff's counsel of the above sum.
>
> \* \* \*
>
> This Stipulation and Order contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time or any written agreement entered into prior to the execution of this Stipulation and Order regarding the subject matter of this action shall be deemed to exist or bind the parties hereto or vary the terms and conditions herein.

The Stipulation was signed by counsel to the respective parties on October 13, 2000, and was endorsed as an order of the Court on October 16, 2000. On that same date, Harris executed a document styled "General Release." Through that document, Harris stated that,

in consideration of payment by or on behalf of the City of New York or [sic] an amount agreed between the parties, to wit, $90,000.00, [he does] hereby release and discharge the defendants . . . it [sic] successors, or assigns, and all past and present officials, employees, representatives and agents of the . . . defendants from any and all claims which were or could have been alleged by me in the aforementioned action arising out of the events alleged in the complaint in said action, including all claims for attorney's fees and costs. This Release may not be changed orally. The undersigned has read this foregoing General Release and fully understands it.

According to Harris,

[a]fter my general release was sent to the City for payment of the settlement, Carroll & Friess, without my knowledge or consent covertly wrote to defendants' counsel, and instructed defense counsel, to ascertain that the payments to be made per the settlement would be by two checks, one being for only thirty five thousand ($35,000.00) dollars payable to me as plaintiff, and the other by check for fifty five thousand ($55,000.00) dollars payable to Carroll & Friess. . . . The defendants, following Carroll & Friess' wrongful and surreptitious request, withheld $55,000.00 of my settlement from me, and instead diverted those funds to Carroll & Friess.

Harris maintains that, "[p]ursuant to my retainer agreement with Carroll & Friess, Esqs., said firm was entitled <u>to a fixed fee of Seven Thousand Five Hundred ($7,500.00) Dollars for all its efforts in representing me in this action</u>. This sum certain was suggested by counsel and they prepared the contract providing the same, which I did then sign under my belief, that a set fee was acceptable, as an alternative to the financial uncertainties of hourly or contingent fee billing. Ms. Carroll, on behalf of her firm, signed the retainer agreement at the same time." (Emphasis in original). Harris attached a copy of the retainer agreement as an exhibit to the affidavit he submitted to the Court in support of the instant motion.

Harris contends that, based on the retainer agreement, "the only amount I owed anyone, from the gross sum of my settlement, was the attorneys' fee of Carroll & Friess, <u>if</u> any part of the agreed $7,500.00 fee remained outstanding at the time of my receipt of my settlement funds, pursuant to the . . . stipulation of settlement." (Emphasis in original). Harris alleges that, prior

to achieving the settlement, he satisfied his $7,500.00 obligation to his counsel, under the retainer agreement, and paid counsel an additional $3,500.00, pursuant to a second retainer agreement prepared in September 1998 by Carroll & Friess, for legal services rendered in connection with the appeal from the order entered on the motion to dismiss.  In support of his assertion that a second retainer agreement was entered into with Carroll & Friess, Harris submitted to the Court, as an exhibit to his Reply Affidavit, a document styled "Retainer Agreement."  That document is signed by Harris, but it is neither dated nor signed by his counsel.

     Harris maintains that the entirety of the settlement amount, $90,000.00, should have been paid to him, without any portion being paid by the defendants to his counsel for legal fees, as he paid all the legal fees to which Carroll & Friess were entitled, based on the "retainer agreements" he contends he entered into with the law firm.  Several months after Harris executed the general release, he received from the defendants a check for $35,000.00, which he believed was a partial payment of the settlement.  When no other settlement funds were sent to him, Harris recalls that he "called Ms. Carroll, and was first told that all I would receive was the Thirty-Five Thousand ($35,000.00) Dollars I had already received.  Shocked, I asked her where the rest of my settlement went or was going.  For the first time, she told me that she claimed and obtained the remainder of Fifty-Five Thousand ($55,000.00) Dollars as her firm's fee."  Harris reports that after learning of this, he presented his fee dispute with Carroll & Friess to "the Disciplinary Committee of the New York State Supreme Court, Appellate Division," unsuccessfully, as the Committee did not discipline his former counsel.  Harris asserts that "both [he] and the Court have been deceived," because Harris did not receive the entire $90,000.00 he believed would come to him perforce of the Stipulation.

> Carroll & Friess had no right to demand . . . a 'split' of the settlement, and the Corporation Counsel had no right to make such a division of the amount payable as the settlement. Such split was not sanctioned by the settlement agreement; the Court did not "So Order" any such division; the division of my settlement into a windfall for my counsel, to my detriment, changed the settlement into one that was grossly unfair to me, an insult to my intelligence and to my own efforts in investigating the case, in funding the case, in prepaying my counsel's attorneys' fee, as agreed, and in assisting my counsel at all stages. . . . I <u>never</u> would have agreed to a settlement designed to enrich my counsel to my detriment.

Accordingly, Harris seeks, through this motion, relief from the Court's order respecting the Stipulation and, in particular, the provision through which Harris withdrew the action with prejudice, and an order directing Carroll & Friess to pay him $165,000.00, pursuant to New York's Judiciary Law. Harris maintains that he did not seek relief from the Court prior to filing this motion because "[he] could not locate [his] copy of the . . . retainer, [and] Carroll & Friess refused to provide [him] with a copy and . . . denied that one existed."

Carroll recalls that Harris "retained Carroll & Friess and on December 20, 1996, [she] prepared a retainer of $7,500.00. At that time, [she] told Plaintiff that [she] would make a motion for attorney fees under the Civil Rights Law for the actual hours worked if we were a 'prevailing party.'" Carroll also recalls that in April 1998, she "filed a notice of appeal on plaintiff's behalf and perfected the appeal to the 2nd Circuit." Carroll maintains that the appeal was successful and "[n]o additional retainer was entered into for attorneys [sic] fees and costs for the appeal and no additional attorney fees were ever paid by the plaintiff for the appeal." According to Carroll, "[p]laintiff never even paid the full $7,500.00 specified in the retainer."

Carroll contends that the defendants

> changed attorneys several times during the litigation [and,] [a]s the trial date approached . . . the [defendants'] final attorney was amenable to settle the action. [That attorney] agreed that $35,000.00 would be paid to plaintiff for damages and that attorney's fees would be paid to Carroll & Friess upon submission of hourly records. . . . I conveyed this offer to plaintiff who agreed to these terms.

Carroll notes that the general release the plaintiff executed in connection with the settlement of the action for $90,000.00 "explicitly included attorney fees and costs." Carroll recalls that, on the date Harris executed the release she "told him that he should receive his check of $35,000.00 for damages in about 60 days" from the date the settlement agreement was executed. Furthermore, according to Carroll, she explained to Harris that she "had submitted to the defendants the records of [her] hours worked and costs incurred, for which the [defendants] would pay [her] from the remainder of the $90,000.00 and that he would not have to pay any moneys he still owed on the retainer."

The plaintiff did not receive his settlement check timely and notified Carroll. She inquired of the office of the defendant city's corporation counsel on Harris' behalf and, "in or about December, 2000," Harris received a "check in the amount of $35,000.00." According to Carroll, "[u]pon receiving his $35,000 check plaintiff did not contact [her] or write [to her] to object to the amount he received under the settlement." Carroll denies the "[p]laintiff's allegations of improper conduct" by her and the defendants' counsel, describing the allegations as "entirely baseless," as "no collusion by the attorneys nor deceit of the Court" occurred. Rather, Carroll contends, she and the defendants' counsel "followed the practice required for the payment of attorneys fees required for payment under the applicable civil rights statutes." Accordingly, she urges that the instant motion be denied.

## DISCUSSION

Rule 60(b) of the Federal Rules of Civil Procedure provides that

> the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepre-

sentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6).

"A motion made under Rule 60(b) must be made within a reasonable time–and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). "A motion seeking relief pursuant to Rule 60(b) is addressed to the sound discretion of the district court." Devino v. Duncan, 215 F. Supp. 2d 414, 416 (S.D.N.Y. 2002)(citation omitted). "Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)(citation omitted). Rule 60(b) "should be broadly construed to do substantial justice, . . . yet final judgments should not be lightly reopened." Id. (internal quotation marks and citations omitted).

Since Harris is proceeding pro se, the Court has "liberally construe[d] his . . . submissions to raise the strongest arguments that they suggest." Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008)(citation omitted). Having done so, the Court construes Harris' motion to have been made pursuant to Rules 60(b)(6) and 60(d)(3).

Rule 60(b)(6)

Rule 60(b)(6) permits a court to grant relief from a final judgment or order for "any other reason [, besides the five set forth in the Rule,] that justifies relief." Fed. R. Civ. P. 60(b)(6). A Rule 60(b)(6) motion is not subject to a specific time limit. However, it must be made within a "reasonable time." Fed. R. Civ. P. 60(c)(1). What constitutes a reasonable time will vary with the particular circumstances of a case, and requires a court to "scrutinize the particular circum-

stances of the case, and balance the interest in finality with the reasons for delay." PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 897 (2d Cir. 1983)(citation omitted). "[A] Rule 60(b)(6) motion requires extraordinary circumstances which typically do not exist where the applicant fails to move for relief promptly." Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 190 n.8 (2d Cir. 2006) (internal quotation marks and citations omitted).

Almost 11½ years elapsed between the entry, on October 17, 2000, of the Court's order, which is the subject of this motion, and the date on which Harris filed his Rule 60 motion, April 5, 2012. He attributes his delay in making the motion to his inability to "locate [his] copy of the . . . retainer," and his counsel's refusal "to provide [him] with a copy." However, neither Harris' inability to locate a copy of his retainer agreement nor a refusal by his counsel to supply a copy of that document to him constitutes an extraordinary circumstance that would excuse Harris from seeking relief from the Court promptly. The record before the Court establishes that shortly after Carroll wrote to the defendants' counsel on December 13, 2000, complaining that Harris had not received the $35,000.00 check referenced above, and urging that the matter be rectified, the $35,000.00 check was sent to him. Harris negotiated the check, notwithstanding the fact that, according to Harris, he expected to receive a $90,000.00 settlement check.

Harris alleges that he "assum[ed]" the $35,000.00 check "was a partial payment from the defendants of my settlement," but he does not explain why he assumed the defendants would make only a partial payment to him, when their obligation, as he contends he always understood it, was to pay him $90,000.00 to settle this action. It is reasonable to infer that Harris received and negotiated the check by the early part of 2001, after Carroll entreated the defendants' counsel in December 2000. At that point, or shortly thereafter, when Harris says he learned from Carroll that no additional settlement payment would be coming to him, Harris was armed with

all the information he needed to make a Rule 60 motion, regardless of whether he possessed a copy of the retainer, because Harris knew that he was not going to receive the $90,000.00 that the Stipulation and the general release, as he understood them, indicated he was to receive. Therefore, Harris' 2012 motion for relief from the Court's order, pursuant to Rule 60(b)(6), was made neither promptly, see Grace, 443 F.3d at 190 n.8, nor "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

Rule 60(d)

Rule 60(d) advises that Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). A fraud upon the court is different from fraud perpetrated on an adverse party, because a fraud upon the court "is limited to fraud which seriously affects the integrity of the normal process of adjudication." Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988). A fraud upon the court "embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of the adjudging cases." Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1325 (2d Cir. 1995)(citation omitted). A fraud upon the court "involves far more than an injury to an individual litigant." Transaero, Inc. v. La Fuerza Area Boliviana, 24 F.3d 457, 460 (2d Cir. 1994).

Harris maintains that his motion "is not based upon my adversary's deceptions; it is based upon my own counsel's fraud, and her breach of her fiduciary duties to me as her client, and her violation of her duties to this Court." "To the best of my knowledge, and belief, neither of the defendants, nor this Court, were advised that any portion of the Ninety Thousand

($90,000.00) Dollars was to be paid to Ms. Carroll, until the <u>defendants</u>, alone, and <u>not</u> the Court nor myself, were advised to distribute the settlement to Carroll and myself, Fifty-Five Thousand ($55,000.00) Dollars to Carroll and Thirty-Five Thousand ($35,000.00) Dollars to me after the closing papers were submitted to the defendants." Harris' assertion that the Court was not "advised that any portion of the Ninety Thousand ($90,000.00) Dollars was to be paid to Ms. Carroll" is not correct. Paragraph two of the parties' Stipulation makes clear that the $90,000.00 the defendants agreed to pay the plaintiff to settle this action included an amount for attorney's fees: "the defendants agree to pay the plaintiffs [sic] the sum of $90,000.00 for damages, cost [sic] and Attorneys' [sic] fees." The Court read the language quoted immediately above when it reviewed the Stipulation prior to endorsing it, on October 16, 2000, as an order of the Court and, therefore, understood that the $90,000.00 were not, as Harris maintains, a payment for his damages solely. Thus, to the extent that Harris contends that a fraud was perpetrated upon the Court, because Carroll failed to advise it that Harris would not receive the entirety of the $90,000.00, Harris is wrong. Furthermore, having construed Harris' submissions on the instant motion liberally, the Court finds that they are devoid of any factual allegations establishing the existence of a "fraud which seriously affects the integrity of the normal process of adjudication," in which a court typically engages. <u>Gleason</u>, 860 F.2d at 559. Instead, Harris' submissions allege no more than "an injury to an individual litigant"; such an allegation does not rise to the level of a fraud upon the Court. <u>Transaero</u>, 24 F.3d at 460. Based on the record before it, the Court finds no basis exists for granting Harris relief pursuant to Fed. R. Civ. P. 60(d)(3).

## CONCLUSION

For the reasons set forth above, Harris' Fed. R. Civ. P. 60 motion, Docket Entry No. 38, is denied.

Dated: New York, New York  
       November 9, 2012

Copies mailed to:

Gerald Harris  
Rosemary Carroll, Esq.

SO ORDERED:

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE